## Tisch *v.* Rockafellow, Appellant.

*Partnership—Executors and administrators—Profits.*

An executor who is also the son of the testator, cannot be held personally liable as a partner in a banking business in which the testator was a partner, merely because he permits as executor, the testator's capital to remain in the business, and permits credits to be entered in his pass book as executor for a share of the profits of the business.

Argued April 14, 1904.   Appeal, No. 85, Jan. T., 1904, by defendant, from judgment of C. P. Luzerne Co., March T., 1899, No. 12, on verdict for plaintiff, in case of Louis Tisch v. F. V. Rockafellow and Thomas Darling, trading as F. V. Rockafellow & Company.   Before MITCHELL, C. J., DEAN, FELL, MESTREZAT and POTTER, JJ.   Reversed.

Assumpsit against an alleged partner.   Before LYNCH, P. J. The facts are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $1,968.06.   Defendant appealed.

*Error assigned* among others was (4) in refusing binding instructions for defendant.

*J. B. Woodward* and *Thomas Darling*, of *Woodward, Darling & Woodward*, for appellant.—It has long been settled that the representatives of the deceased have no right to succeed him in the firm unless there is a clear agreement to that effect: Lindley on Partnership, star page 232; Pickens's Est., 14 W. N. C. 407; Gwinn v. Lee, 6 Pa. Superior Ct. 646.

*James L. Lenahan*, for appellee.—A participant in profits, directly as such, no matter what may be the arrangement between the parties, is, as to third persons, a partner: Edwards v. Tracy, 62 Pa. 374; Wessels v. Weiss, 166 Pa. 490.

OPINION BY MR. JUSTICE POTTER, June 15, 1904:

The plaintiff in this case was a depositor in the private banking house of F. V. Rockafellow & Company. The firm was originally formed in 1869 and consisted of E. P. Darling, Thomas Blake and F. V. Rockafellow. Blake died in 1885, but the partnership was continued by F. V. Rockafellow and E. P. Darling until the death of the latter, October 19, 1899. At that time, E. P. Darling had $20,000 of capital invested in the bank and shared equally with Rockafellow in the results of the business. Thomas Darling, the appellant here, is the son of E. P. Darling and the executor of his estate. The banking house failed in business and closed its doors upon February 7, 1893. The plaintiff, who was a creditor of the bank, sought to recover from the defendant Thomas Darling the amount of the balance due him at the time of the failure, upon the ground that he had personally become a partner, in the bank. No partnership agreement between Rockafellow, the surviving partner of the old firm, and Thomas Darling was alleged, nor did the plaintiff claim that he had ever been led to believe that Thomas Darling was a partner. On the contrary he admitted that when he transacted his business with the bank, he knew of no one except Rockafellow, as constituting the firm. His claim against Thomas Darling rests solely upon the theory that he allowed his father's investment of $20,000 in the bank, at the time of his death, to remain there, and that he afterwards accepted profits from the business, and that because of his action in this respect he became personally liable as a partner. It appears from the evidence that within about three years, something more than $8,000 was paid by Rockafellow to Thomas Darling

as executor, by the entry of credits upon the pass book of the estate, in account with the bank. The surviving partner Rockafellow called these payments dividends, but he would not say that Thomas Darling knew that they were such. On the contrary, Thomas Darling testified that immediately after his father's death he asked Rockafellow how soon he could withdraw his father's capital and was told that he (Rockafellow) would pay it as soon as he could.

The trial judge submitted the case to the jury with instructions to find for the plaintiff if they believed Thomas Darling received as profits the payments which had been entered upon the pass book. They did so find, and this appeal is taken from the judgment entered upon their verdict. We can find nothing whatever in the evidence to justify the submission of this question to the jury. The defendant Thomas Darling dealt with the bank in the first instance admittedly in his representative capacity as executor, and there is not a syllable of testimony to show that any change occurred in his relation to the bank. The capital which remained was the fund of the estate, and the payments which were made were passed directly to the credit of the estate, and did not in any way, so far as the evidence shows, go into the hands of Thomas Darling personally. So that in any aspect of the case, even if the amounts paid were rightfully considered as dividends instead of payments on account of principal, yet these payments were to the estate of E. P. Darling and were not to Thomas Darling personally. If a stranger had been acting as executor instead of the son of E. P. Darling, and these payments had been made in the same way, it is safe to say that no one would have questioned the fact that they were payments to the estate, and not to the executor individually. Counsel for the appellee seems to feel the pinch of this test, for he suggests that Thomas Darling as legatee under his father's will, permitted his own capital to remain in the business, and that as legatee, he participated in the profits. But unfortunately for the merits of this suggestion, there is not a word of testimony to support it. We can find nothing whatever to bridge over the distinction between Thomas Darling acting as executor, and as an individual. He is not under the evidence, connected with the transaction in any capacity other than as executor.

The trial judge should have affirmed the defendant's sixth point, and instructed the jury that under all the evidence the verdict must be for the defendant. The fourth assignment of error is therefore sustained and the judgment is reversed.